(C. D. 100)

Andre Debrie, Inc. *v.* United States

United States Customs Court, Second Division

(Decided February 10, 1939)

*Strauss & Hedges* (*Howard C. Carter* of counsel) for the plaintiff.
*Webster J. Oliver*, Assistant Attorney General (*Richard E. FitzGibbon*, special attorney), for the defendant.

Before Tilson, Kincheloe, and Dallinger, Judges

Dallinger, Judge: This is a suit against the United States, arising at the port of New York, brought to recover certain customs duties alleged to have been improperly exacted on a particular importation consisting of a machine for printing colored motion-picture positive films from colored motion-picture negative films. Duty was levied

thereon at the rate of 35 per centum ad valorem under paragraph 353 of the Tariff Act of 1930 as articles having as an essential feature an electrical element or device. It is claimed that said articles are properly dutiable at the rate of 25 per centum ad valorem under the provision in paragraph 372 of said act for printing machinery, or alternatively at 27½ per centum ad valorem under the same paragraph as a machine not specially provided for.

The plaintiff offered in evidence the testimony of two witnesses. The first, Herman Jordan, a mechanic in the employ of the plaintiff corporation, testified that he assisted in the assembling and installing of the machine in question; that said machine is about 7 feet square and 5 feet high; that the base was composed of iron casting, the top of aluminum casting, the gears of steel, and the bearings of brass; that there are two electric-light bulbs located in what is known as the light houses of the machine, one of said houses being in the back and the other in the front of the machine; that with the machine as imported came an electric motor packed in a separate case; that said motor was mounted on a bracket on the back of the machine, being fastened by a couple of bolts and screws, and that the motor is connected with the operating parts of the machine by a direct coupling.

On cross-examination he testified that the motor was intended to be used with this particular machine and was used to operate it after its installation; that there were holes in the casting of the motor and also in the casting of the machine for the attachment of said motor; that the coupling which connected the motor with the machine was a flexible coupling and that the machine is used for printing motion-picture films, the printing being done by means of the electric lights; that there is an electric wire inserted into the machine connecting the two electric lamps; that the machine cannot print the film without the use of these electric lamps and that there were electrical wiring and switches inside of the machine to utilize the electric current to light the lamps.

Reginald Fawn Mitchell, an electrical engineer in the employ of the plaintiff corporation, described the machine at bar as follows:

Essentially, it consists of a framework incorporating an intermittent mechanism, designed to operate film intermittently, which includes, of course, gears, cams, and countershafts, and such. In addition, as it brings the film down to an aperture, it contains a mechanism that opens the light houses, concentrating the light on the film, when the printing operation occurs, and then releases the intermittent gears or mechanism that moves the film down, and the operation is repeated on the film for the entire length, which is a thousand feet.

The witness then testified that the machine could be operated by power other than electric motor; that in order to do so the motor would have to be removed and a shaft with a pulley installed; that in that case an electric battery would have to be installed to operate

the electric lights in the light houses; that the electric motor in that case would not control the lights; that the machine in question could be used either to print by light or by pressure; that in order to print by pressure the light houses would have to be removed, which would not be expensive, and that he had operated the machine in question only by hand in order to make a check on it to see if it was functioning.

On cross-examination he testified that he had never seen a machine identical with that at bar operated by other than an electric motor; that when the intermittent action of the gears, which advances the negative and positive films to position for printing, ceases, then the lights in the machine do the printing; that the electric lights in the machine are on continuously during this operation and actually do the printing; that said lamps are continuously lighted in the machine by electricity; that the machine is wired so that an electric current can keep the lamps lighted; that this particular machine was primarily designed for printing by electric light rather than by pressure; that in speaking of the machine as a printing machine the witness referred to photographic printing from a negative to a positive film; and that the machine does not do any printing by the use of type or colored plates and does not print on paper.

On redirect examination the witness testified that he had never operated a machine identical with the one at bar; and that in his opinion the motor and its frame could be removed and a belt pulley and shaft substituted therefor.

The witness Jordan being recalled by the plaintiff testified that the machine shown by him to the witness Mitchell was similar to the machine at bar except that it had no motor.

On recross-examination he testified that the machine shown by him to the witness Mitchell was operated by electricity and all of the machines similar to the one here in question are driven by electric power.

Upon this record counsel for the plaintiff in their brief filed herein contend, first, that the machine herein is printing machinery within the meaning of paragraph 372 of the Tariff Act of 1930, and that that classification is more specific than paragraph 353 under which the machine was assessed for duty. On this point we are of the opinion that the case of *United States* v. *Paramount Publix Corp.,* 22 C. C. P. A. 452, T. D. 47453, is here controlling. In that case the First Division of this court had held a certain machine for reproducing motion pictures by printing on a blank film the picture which is developed on a developed film to be printing machinery within the meaning of paragraph 372, as claimed by the importer. In holding that the machine was not so classifiable the appellate court said:

. -Appellant's contention that the importation should be held to be a printing machine under the provisions of paragraph 372, and dutiable at only 25 per centum ad valorem, must next be considered. This question involves not only a consideration of the context of the paragraph, but of the legislative history connected therewith. It will be noticed that the paragraph provides for "printing machinery (except for textiles), bookbinding machinery, and paper-box machinery, 25 per centum ad valorem * * *."

The testimony in this case shows that the image on a developed film projected onto a mirror is photographed onto an undeveloped film and that this process is styled "printing" by those who use the term in connection with photography. It is a matter of common knowledge that the term "printing" is often applied to the act of transferring, by the agency of light, to a sensitized positive, an image which is on a negative. * * *

: Then, after considering in some detail the legislative history of paragraph 372 of the Tariff Acts of 1922 and 1930, the appellate court continues as follows:

From a consideration of the context of the provision in controversy and such legislative history of the same as we are justified in taking into account, we are convinced that by the change made in the bill as it came from the House, it was intended to include within the provision not only printing presses, which the prior act had included, but to also include bookbinding machinery, paper-box machinery, and other printing machinery which is associated with typography. We do not think Congress intended by the provision in controversy to in any way affect photographic equipment and did not have such articles in mind when said provision was enacted into law.

. It is here argued,. in substance, that the parenthetical words "except for textiles" found in the provision under consideration, warrant the conclusion that by the use of such term Congress intended to use "printing machinery" in a broader sense than is contended for here by the Government; that it is fair to infer that Congress believed that if it did not expressly exclude textile-printing machinery, it might be regarded as included within the provision, and that it was making provision for textile machinery elsewhere and desired that it be there classified for duty purposes. There is a distinct difference between the process of textile printing and that of photographic printing. To print textiles, ink or color is directly applied to the textile through the means of rollers, blocks, or other impressing devices. The operation is quite similar to the art of printing letters and characters upon paper. That is not true with photographic printing. An image on a negative is transferred to a sensitized positive not by direct contact, but by the action of light, and we feel certain that Congress did not have this process in mind when it used the term "printing machinery."

In regard to the other contention of counsel for the plaintiff that the collector was wrong in classifying the instant machine under paragraph 353 as an article having as an essential feature an electrical element or device, and that it should be classified under the said paragraph 372 as a machine not specially provided for, we are of the opinion that, in the first place, considering the fact that the witness Mitchell never saw the imported machine which is the subject of the within protest, his testimony is entitled to very little weight. The uncontradicted evidence before us discloses that this particular machine was constructed and designed to be operated by an electric

motor which accompanied the importation (*United States* v. *Dryden Rubber Co.*, 22 C. C. P. A. 51, T. D. 47050). Furthermore, the evidence is also uncontradicted that there were contained in the internal mechanism of said machine electric wiring, switches, and two electric lights, said lights being in continuous operation during the functioning of the machine, which lights accomplish the printing of the film and without which the machine in its imported condition could not perform the work for which it was designed.

Upon the entire record we hold as a matter of law that the plaintiff has failed to sustain the burden of proving that the classification of the collector was erroneous. All claims are therefore overruled and the decision of the collector is affirmed. Judgment will be rendered accordingly.